O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TORA M. BALDREE,                    )  NO. SACV 13-00071-MAN
                                    )
            Plaintiff,              )
                                    )  MEMORANDUM OPINION
      v.                            )  AND ORDER
                                    )
CAROLYN W. COLVIN,[1]               )
Acting Commissioner of Social       )
Security,                           )
                                    )
            Defendant.              )
_____    )

      Plaintiff filed a Complaint on January 14, 2013, seeking review of the denial of plaintiff's application for a period of disability and disability insurance benefits ("DIB").  On February 4, 2013, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge.  The parties filed a Joint Stipulation on July 18, 2013, in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings.  The Court has taken the parties' Joint Stipulation under submission

---

[1]      Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013, and is substituted in place of former Commissioner Michael J. Astrue as the defendant in this action.  (*See* Fed. R. Civ. P. 25(d).)

without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for a period of disability and DIB on May 19, 2010. (Administrative Record ("A.R.") 14.)  Plaintiff, who was born on May 29, 1949 (A.R. 47), claims to have been disabled since October 12, 2009, due to arthritis, high blood pressure, depression, loss of balance, acid reflux, and allergies (A.R. 71, 79).  Plaintiff has past relevant work experience as a billing and data entry clerk.  (A.R. 20.)

After the Commissioner denied plaintiff's claim initially and upon consideration, plaintiff requested a hearing.  (A.R. 14.)  On August 29, 2011, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Joseph Lisiecki (the "ALJ"). (*Id.*)  Vocational expert Luis Mas and medical expert Steven Gerber, M.D. also testified.  (*Id.*)  On October 4, 2011, the ALJ issued a partially favorable decision, finding that plaintiff was not disabled prior to June 1, 2011, but was disabled thereafter.  (A.R. 21.)   The Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision.  (A.R. 1-3.)  That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

In his October 4, 2011 decision, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through March 31, 2012, and plaintiff has not engaged in substantial gainful activity since October 12, 2009, the alleged onset date of her disability. (A.R. 16.)  The ALJ determined that plaintiff has the severe impairments of:  "hypertension; degenerative disc disease of the cervical spine; degenerative joint disease of [the] right knee, hip, and shoulder as of July 2011; fibromyalgia; right hand and carpal tunnel syndrome as of June 2011; and obesity." (*Id.*)  The ALJ concluded, however, that "[s]ince the alleged onset date of

disability, October 12, 2009, [plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR [§§] 404.1520(d), 404.1525 and 404.1526 )." (*Id.*)

After reviewing the record, the ALJ determined that prior to June 1, 2011, the date on which plaintiff's disability was determined to have commenced, plaintiff had the residual functional capacity ("RFC") to perform less than a full range of light work as defined in 20 C.F.R. § 404.1567(b). (A.R. 16.) Specifically, the ALJ found that:

> [plaintiff] can occasionally lift and carry twenty pounds and frequently lift and carry ten pounds; she can stand and/or walk with normal breaks for a total of four hours in an eight-hour workday and sit with normal breaks for a total of six hours in an eight-hour workday; she is to avoid climbing ladder[s], rope[s], and scaffolds; and she can occasionally perform postural activities.

(A.R. 16-17.) In making this finding, the ALJ considered the subjective symptom testimony of plaintiff, which the ALJ found was not entirely credible with respect to the period prior to June 1, 2011, as well as the medical evidence and opinions of record. The ALJ gave "great weight" to the opinion of the medical expert and board certified internist, Dr. Gerber. (A.R. 19.) In so doing, the ALJ noted that Dr. Gerber had an opportunity to review the expanded record, and Dr. Gerber's opinion was "the most restrictive of the three relevant medical opinions." (*Id.*) The ALJ further noted that "[t]here is no relevant contradictory medical source opinion offered by a treating or any other medical source." (*Id.*)

///
///
///
///

1     Based on plaintiff's age, education,[2] work experience, and RFC, as well as the testimony
2   of the vocational expert, the ALJ determined that prior to June 1, 2011, plaintiff was capable of
3   performing her past relevant work as a billing and data entry clerk, because "[t]his work did not
4   require the performance of work-related activities precluded by [plaintiff]'s [RFC]." (A.R. 20.)
5   Beginning on June 1, 2011, however, the ALJ determined that plaintiff had the RFC to perform
6   only light work as defined in 20 C.F.R. § 404.1567, with limitations in her right hand manipulation
7   and right shoulder use. (Id.) After considering plaintiff's age,[3] education, work experience, and
8   RFC as well as the testimony of the vocational expert, the ALJ determined that "[s]ince June 1,
9   2011, . . . there are no jobs that exist in significant numbers in the national economy that
10  [plaintiff] can perform." (A.R. 21.)

11

12     Accordingly, the ALJ concluded that plaintiff "was not disabled prior to June 1, 2011, . . .
13  but became disabled on that date and has continued to be disabled through [October 4, 2011,]
14  the date of []his decision." (A.R. 21.)

15

16                                 **STANDARD OF REVIEW**

17

18     Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine
19  whether it is free from legal error and supported by substantial evidence in the record as a whole.
20  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence
21  as a reasonable mind might accept as adequate to support a conclusion.'" Id. (citation omitted).
22  The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett
23  v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute
24  substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v.

25

26   _____

27     [2]     The ALJ determined that plaintiff "has at least a high school education and is able
    to communicate in English." (A.R. 21.)

28     [3]     On June 1, 2011, plaintiff was an individual of advanced age. (A.R. 21.)

                                            4

1   Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

2

3       Although this Court cannot substitute its discretion for that of the Commissioner, the Court

4   nonetheless must review the record as a whole, "weighing both the evidence that supports and

5   the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health

6   and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995

7   (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical

8   testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.

9   1995).

10

11      The Court will uphold the Commissioner's decision when the evidence is susceptible to

12  more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

13  However, the Court may review only the reasons stated by the ALJ in his decision "and may not

14  affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett,

15  340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless

16  error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential

17  to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th

18  Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400

19  F.3d at 679.

20

21                              **DISCUSSION**

22

23      Plaintiff asserts four sources of error. (Joint Stipulation ("Joint Stip.") at 2-3.)  First,

24  plaintiff claims that the ALJ failed to properly consider the opinion of her treating physician, Samir

25  Azzam, M.D.  Second, plaintiff claims that the ALJ failed to properly consider the opinion of her

26  treating physician, Nina Trinh, M.D.  Third, plaintiff claims that the ALJ failed to properly assess

27  her subjective symptom testimony.  Lastly, plaintiff claims that the ALJ improperly credited the

28  opinion of the medical expert, Dr. Gerber.  As plaintiff's first, second, and fourth claims are

5

1   interrelated, they will be addressed together.

2

3   **I.    The ALJ Failed To Give Specific And Legitimate Reasons For**
4   **Rejecting The Opinions Of Plaintiff's Treating Physicians And Should**
5   **Revisit His Assessment Of, And The Weight Afforded To, The**
6   **Medical Expert.**

7

8            A.  Legal Standard

9

10           An ALJ is obligated to take into account all medical opinions of record.  20 C.F.R. §
11   404.1507(d).  It is the responsibility of the ALJ to resolve conflicts in medical testimony and
12   analyze evidence.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of
13   physician opinions considered in assessing a social security claim, "[g]enerally, a treating
14   physician's opinion carries more weight than an examining physician's, and an examining
15   physician's opinion carries more weight than a reviewing physician's."  Holohan v. Massanari, 246
16   F.3d 1195, 1202 (9th Cir. 2001); *see also* 20 C.F.R. § 404.1527(d).

17

18           The opinions of treating physicians are entitled to the greatest weight, because the treating
19   physician is hired to cure and has a better opportunity to know and observe the claimant.
20   Magallanes, 881 F.2d at 751.  When a treating or examining physician's opinion is not
21   contradicted by another physician, it may be rejected only for "clear and convincing" reasons.
22   Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  When contradicted by another doctor, a
23   treating or examining physician's opinion may only be rejected if the ALJ provides "specific and
24   legitimate" reasons supported by substantial evidence in the record. *Id.*; *see also* Ryan v. Comm'r
25   of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Orn, 495 F.3d at 632.

26

27           "The opinion of a nonexamining physician cannot by itself constitute substantial evidence
28   that justifies the rejection of the opinion of . . . a treating physician."  Lester, 81 F.3d at 831; *see*

6

1  Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990) (finding that the nonexamining physician's
2  opinion "with nothing more" did not constitute substantial evidence).   However, "[w]here the
3  opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating
4  source is based on independent clinical findings that differ from those of the treating physician,
5  the opinion of the nontreating source may itself be substantial evidence."   Andrews, 53 F.3d at
6  1041.  Independent clinical findings include "(1) diagnoses that differ from those offered by
7  another physician and that are supported by substantial evidence, or (2) findings based on
8  objective medical tests that the treating physician has not herself considered."   Orn, 495 F.3d at
9  632 (internal citations omitted).

10

11                    B.   Relevant Medical Opinions

12

13                        1.   Dr. Azzam - Treating Physician

14

15          On November 1, 2010, plaintiff's treating physician, Dr. Azzam, completed a medical
16  assessment regarding plaintiff's ability to perform work-related activities.  (A.R. 321-35.)  Dr.
17  Azzam opined that plaintiff could:  occasionally lift and carry up to 10 pounds; never lift and carry
18  more than 10 pounds; sit for one hour, stand for half an hour, and walk for half an hour at one
19  time without interruption; sit for four hours and stand/walk for two hours total in an eight-hour
20  workday; occasionally perform simple grasping and fine manipulation with her hands; occasionally
21  balance; never climb, stoop, crouch, kneel, crawl, or push/pull; occasionally reach and handle;
22  and frequently feel.  (A.R. 321-24.)  In addition, Dr. Azzam opined that plaintiff:  should take
23  unscheduled breaks during her workday; should elevate her legs with prolonged sitting; should
24  expect to have an average of three "bad days" a month; has moderate limitations in her ability
25  to be around to moving machinery; has moderate limitations in her ability to be exposed to
26  marked changes in temperature or humidity, dust, fumes, and gases; and has mild limitations in
27  her ability to drive automotive equipment.  (A.R. 323-25.)

28

                                                 7

### 2.  Dr. Trinh - Treating Physician

On January 18, 2011, plaintiff's treating physician, Dr. Trinh, also completed a medical assessment regarding plaintiff's ability to perform work-related activities.  (A.R. 382-86.)  Dr. Trinh opined that plaintiff could:  occasionally lift and carry up to 10 pounds; never lift and carry more than 10 pounds; sit, stand, and walk for half an hour at one time without interruption; sit, stand, and walk for two hours total in an eight-hour workday; occasionally perform simple grasping and fine manipulation with her hands; never climb, balance, stoop, crouch, kneel, or crawl; never reach, push, or pull; and occasionally handle.  (A.R. 382-85.)  Additionally, Dr. Trinh opined that plaintiff should:  take unscheduled breaks during her workday; elevate her legs during the day; expect to have more than three "bad days" per month; and should avoid unprotected heights, being around moving machinery, exposure to marked changes in temperature and humidity, and expsoure to dust, fumes, and gases.  (A.R. 384-86.)

### 3.  Dr.  Enriquez - Consultative Examiner

On August 30, 2010, consultative examiner and internist, Concepcion Enriquez, M.D., examined plaintiff.  Based on his examination of plaintiff as well as his review of plaintiff's medical records and history, Dr. Enriquez opined that plaintiff:

> can occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds.  [Plaintiff] can stand and/or walk with normal breaks for six hours in an eight-hour workday.  [Plaintiff] can sit with normal breaks for six hours in an eight-hour day.  [Plaintiff] can still do frequent bending, stooping and twisting.  [Plaintiff] can do frequent squatting, crouching and kneeling.

(A.R. 293.)

1

2

### 4.  Dr. May - State Agency Physician

3       On September 22, 2010, State agency physician, R. May, M.D., reviewed the medical

4 record of evidence and opined that:

5

6       [plaintiff] can occasionally lift and carry [50] pounds and frequently lift and carry

7       [25] pounds; she can stand and/or walk with normal breaks for a total of six hours

8       in an eight-hour workday and sit with normal breaks for a total of six hours in an

9       eight-hour workday; she has no limitation in pushing and pulling activities including

10      operation of hand/foot controls; she can frequently climb ramp[s], stairs, ladder[s],

11      rope[s], and scaffolds, balance, stoop, kneel, crouch, and crawl; and she has no

12      manipulative, visual, communicative, and environmental limitations.

13

14 (A.R. 18.)

15

### 5.  Dr. Gerber - Medical Expert

16

17

18      At the administrative hearing, medical expert and internist, Dr. Gerber opined that plaintiff:

19 can occasionally lift and carry 20 pounds; can perform postural activities occasionally; can stand

20 and/or walk for four hours out of an eight hour workday with normal breaks; can sit for six hours

21 out of an eight hour workday with normal breaks; and should avoid climbing ladders, ropes, and

22 scaffolds.  (A.R. 50.)  Dr. Gerber further opined that, beginning June 1, 2011,  plaintiff had the

23 additional limitations of:  no constant manipulation with the use of the right hand; and only

24 occasional reaching overhead with the right hand.  (A.R. 51.)

25

26      C.  Analysis

27

28      In determining plaintiff's RFC, the ALJ summarized the opinions of Dr. Azzam, Dr. Trinh,

Dr. Enriquez, Dr. May, and Dr. Gerber.  The ALJ noted that Dr. Gerber had the "most restrictive" of "the *three* relevant medical opinions," and he gave "great weight" to Dr. Gerber's opinion. (A.R. 19; emphasis added.)  In so doing, the ALJ further noted that "[t]here [wa]s no relevant contradictory medical source opinion offered by a treating or any other medical source." (*Id.*) The ALJ proffered no reason for affording less weight to the more restrictive opinions of Dr. Azzam and Dr. Trinh.

As an initial matter, and contrary to the ALJ's assertion, there are more than three relevant medical opinions of record, so it is unclear as to which medical opinions the ALJ is referring.  Dr. Gerber's opinion is not, however, the most restrictive medical opinion of record.  While Dr. Gerber's opinion is undoubtedly more restrictive than the opinions of Dr. Enriquez and Dr. May, the opinion of Dr. Gerber is *less* restrictive, in significant respects, than the opinions of Dr. Azzam and Dr. Trinh.  For example, unlike Dr. Gerber, Dr. Azzam and Dr. Trinh opined that plaintiff: could only lift/carry ten pounds occasionally; needs to elevate her legs; has more significant limitations with respect to her postural activities; should expect to have at least three "bad days" per month; and has manipulative limitations prior to June 1, 2011.  Dr. Gerber's opinion is thus contradicted by the opinions of Dr. Azzam and Dr. Trinh.

Further, to the extent, as the Commissioner contends, that the ALJ rejected the opinions of Dr. Azzam and Dr. Trinh, because their treatment records do not indicate disabling conditions, the ALJ's reasoning is unavailing.  In discussing the treatment records of both Dr. Azzam and Dr. Trinh, the ALJ offered the same boilerplate statement:  "the[] progress notes do not show any significant abnormalities, functional limitations, and/or diagnoses, as either the[] conditions mentioned were stable and/or stabilized." (A.R. 18-19.)  Contrary to the ALJ's assertions, the treatment notes of Dr. Azzam and Dr. Trinh contain significant findings that appear to support their opinions regarding plaintiff's functional limitations.  For example, Dr. Azzam's treatment notes and objective medical testing indicate that plaintiff has:  pain and tenderness in her right knee and shoulder; degenerative osteoarthritis in her right knee and hip; lateral soft tissue

10

swelling and pain in her right ankle; mild acromioclavicular joint arthropathy in her right shoulder; a small bone island in her right femur; hypertension; and depression. (*See, e.g.,* A.R. 266, 270, 272, 276-79, 281.) Similarly, treatment notes from Dr. Trinh show: tenderness on palpation in plaintiff's fingers, wrists, and shoulders; Heberden's nodes on plaintiff's fingers; and diagnoses of arthralgia/myalgia, osteoarthritis in her knees, right shoulder tendonitis, numbness in her hands, osteoporosis, hypertension, obesity, and depression. (A.R. 365, 369.) Further, there does not appear to be any indication by Dr. Azzam or Dr. Trinh that plaintiff's condition is stable and/or stabilized. Thus, the ALJ has not provided specific and legitimate reasons for rejecting the opinions of plaintiff's treating physicians, Dr. Azzam and Dr. Trinh, as required.

Accordingly, for the aforementioned reasons, the ALJ failed to properly assess the opinions of Dr. Azzam and Dr. Trinh.[4] On remand, the ALJ either must provide specific and legitimate reasons for rejecting their opinions or factor those opinions into his assessment of when plaintiff's disability commenced.

D. Commencement Date Of Plaintiff's Disability

It is unclear whether the opinion of Dr. Gerber, upon whose opinion the ALJ relied in finding that plaintiff was not disabled until June 1, 2011, is supported by substantial evidence. First, Dr. Gerber's opinion is not supported by the opinions of plaintiff's treating physicians, both of whom found plaintiff to be more limited. Second, as discussed *infra*, while Dr. Gerber testified, based on the results of objective medical testing, that plaintiff had additional manipulative

---

[4] While the Commissioner now offers other reasons to explain the ALJ's rejection of the opinions of Dr. Azzam and Dr. Trinh, plaintiff's treating physicians, the Court cannot entertain these post hoc rationalizations. *See, e.g.,* Orn, 495 F.3d at 630 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm on a ground upon which he did not rely"). Further, the Commissioner's post hoc rationalizations are, in part, belied by the record. (*See, e.g.,* Joint Stip. at 7-9.) For example, the Commissioner suggests that the ALJ rejected Dr. Azzam's opinion, because it was inconsistent with his own findings. (Joint Stip. at 6.) The ALJ's decision, however, contains no such rationale for rejecting Dr. Azzam's opinion, and the Commissioner provides no citation to the record to support her assertion.

1   limitations beginning on June 1, 2011, he also testified that it was possible plaintiff's limitations
2   could have started earlier, and he "just d[idn]'t . . . know when [he] would be able to establish
3   that [plaintiff's] abnormality was at a severity to result in functional limitations." (A.R. 54.)

5   In fact, the medical evidence of record suggests the possible, if not probable, existence of
6   manipulative limitations prior to June 2011. For example, a June 14, 2011, neurodiagnostic test
7   of plaintiff's hands pointed to "chronic" symptomatic right carpal tunnel syndrome. (A.R. 458.)
8   The fact that plaintiff's carpal tunnel syndrome was characterized as "chronic" suggests that the
9   condition existed prior to the June 14, 2011 testing date. (Joint Stip. at 16-17.) In addition, the
10  MRI of plaintiff's shoulder performed on July 27, 2011 showed a large rotator cuff tear, tendinosis,
11  and possible partial tears, subluxation, and fatty atrophy. (A.R. 479.) The fact that plaintiff's MRI
12  results showed atrophy suggests that plaintiff's condition likely had deteriorated for a period of
13  time prior to the July 27, 2011 MRI.

15  Given Dr. Gerber's uncertainty about the commencement date of plaintiff's disability and
16  in view of the opinions of plaintiff's treating physicians that plaintiff had manipulative limitations
17  prior to June 1, 2011, on remand, the ALJ should revisit the weight he afforded to Dr. Gerber's
18  opinion.

20  **II.   On Remand, The ALJ Should Also Revisit His Assessment Of**
21       **Plaintiff's Credibility.**

23  Once a disability claimant produces objective medical evidence of an underlying impairment
24  that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective
25  testimony as to the severity of the claimant's symptoms must be considered. Moisa v. Barnhart,
26  367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also
27  20 C.F.R. § 404.1629(a) (explaining how pain and other symptoms are evaluated). "[U]nless an
28  ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find

1    an applicant not credible by making specific findings as to credibility and stating clear and

2    convincing reasons for each." <u>Robbins</u>, 466 F.3d at 883.   The factors to be considered in

3    weighing a claimant's credibility include:   (1) the claimant's reputation for truthfulness; (2)

4    inconsistencies either in the claimant's testimony or between the claimant's testimony and her

5    conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from

6    physicians and third parties concerning the nature, severity, and effect of the symptoms of which

7    the claimant complains. *See* <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also*

8    20 C.F.R. § 404.1529(c).

9

10    After considering plaintiff's testimony, the ALJ cited no evidence of malingering by plaintiff

11    and concluded that "[plaintiff]'s medically determinable impairments could reasonably be expected

12    to cause the alleged symptoms."   (A.R. 19.)   However, the ALJ determined that plaintiff's

13    "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not

14    credible prior to June 1, 2011, to the extent they are inconsistent with the [RFC] assessment."

15    (*Id.*)  Given the absence of malingering, the ALJ's reasons for finding that plaintiff is not credible

16    with respect to her subjective symptom testimony must be "clear and convincing."

17

18    In his decision, the ALJ primarily relies on two reasons for rejecting plaintiff's subjective

19    symptom complaints prior to June 1, 2011.[5]  First, the ALJ rejects plaintiff's subjective symptom,

20    because her medical treatment has been limited. (A.R. 20.)  While it is permissible for an ALJ to

21    evaluate the credibility of a claimant's subjective limitations based, in part, on plaintiff's record

22    of receiving minimal and conservative treatment, the ALJ must make detailed findings of fact so

23    that a reviewing court may determine whether substantial evidence supports the ALJ's conclusion.

24    The ALJ's assertion, with nothing more, fails to meet this burden.  As such, the ALJ's first reason

25

26    ⁵       In discussing plaintiff's credibility, the ALJ notes that "there is no credible evidence
      of strong medication to alleviate pain that would significantly impair [plaintiff]'s ability to do work
27    activities.   Additionally, there is no evidence of any side effects from any regular medications."
      (A.R. 20.)   Contrary to the Commissioner's contention, it appears that the ALJ was merely
28    considering any potential side effects from plaintiff's medications rather than proffering reasons
      for finding plaintiff to be not credible.

13

1    for rejecting plaintiff's subjective symptom testimony does not constitute a clear and convincing

2    reason for rejecting plaintiff's testimony.

3

4        Next, the ALJ rejects plaintiff's subjective symptom testimony based on his conclusion that

5    the medical evidence of record does not support plaintiff's subjective complaints prior to June 1,

6    2011.  (A.R. 20.)  As an initial matter, the failure of the objective medical evidence to corroborate

7    the degree of plaintiff's allegedly disabling symptoms cannot form the "sole basis" for discounting

8    plaintiff's subjective symptom testimony.  Burch, 400 F.3d at 681; see Bunnell, 947 F.2d at 347

9    (noting that "[i]f an adjudicator could reject a claim of disability simply because a claimant fails

10   to produce medical evidence supporting the severity of the pain, there would be no reason for

11   an adjudicator to consider anything other than medical findings").  Further, to the extent the ALJ

12   discredited plaintiff because the objective medical evidence "did not support [plaintiff's]

13   manipulative limitations until June of 2011," the ALJ's reasoning is not entirely convincing.  (A.R.

14   20.)

15

16        As discussed above, a June 14, 2011 neurodiagnostic test of plaintiff's hands revealed

17   "chronic" symptomatic right carpal tunnel syndrome (A.R. 458), and the July 27, 2011 MRI of

18   plaintiff's shoulder revealed shoulder injury abnormalities, including atrophy (A.R. 479).  Even Dr.

19   Gerber, upon whose testimony the ALJ relied, testified that it was possible that plaintiff's

20   complaints supported manipulative limitations prior to June 2011.  Dr. Gerber "just d[id]n't really

21   exactly know when [he] would be able to establish that the abnormality was at a severity to result

22   in functional limitations."  (A.R. 54.)  Significantly, the medical opinions of Dr. Azzam and Dr.

23   Trinh, whose opinions the ALJ failed to properly assess, clearly indicate that plaintiff had

24   manipulative limitations prior to June 2011.

25

26        Accordingly, in view of the foregoing, and the fact that this case is being remanded for the

27   ALJ to reconsider the opinions of Dr. Azzam and Dr. Trinh, which may support plaintiff's

28   complaints and her alleged limitations, the ALJ should reassess plaintiff's credibility.  After so

14

1  doing, the ALJ must either credit plaintiff's subjective symptom testimony or provide clear and
2  convincing reasons why plaintiff's testimony in this respect is not credible.

3

4  **III.   Remand Is Required.**

5

6  The decision whether to remand for further proceedings or order an immediate award of
7  benefits is within the district court's discretion.  _Harman v. Apfel_, 211 F.3d 1172, 1175-78 (9th
8  Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or
9  where the record has been fully developed, it is appropriate to exercise this discretion to direct
10  an immediate award of benefits.  _Id._ at 1179 ("[T]he decision of whether to remand for further
11  proceedings turns upon the likely utility of such proceedings.").  However, where there are
12  outstanding issues that must be resolved before a determination of disability can be made, and
13  it is not clear from the record that the ALJ would be required to find the claimant disabled if all
14  the evidence were properly evaluated, remand is appropriate.  _Id._ at 1179-81.

15

16  Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-
17  mentioned deficiencies and errors.  On remand, the ALJ must correct the above-mentioned
18  deficiencies and errors and properly assess where plaintiff's disability commenced on a date earlier
19  than the June 1, 2011 date as of which she previously was found to be disabled.
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED:  February 25, 2014

_Margaret a. Nagle_
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

16